CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 01 2016

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LENNOX KHAN EL ARMSTRONG, | ) | CASE NO. 7:16CV00106 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD W. CLARKE, DIRECTOR, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

Lennox Khan El Armstrong, a Virginia inmate proceeding pro se, filed this action as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Armstrong alleges that a Virginia good conduct time statute and the application of that statute to his sentence by officials of the Virginia Department of Corrections ("VDOC") has deprived him of constitutionally protected rights. Upon review of the record, the court concludes that the action must be summarily dismissed, because Armstrong's allegations fail to state any claim for relief under § 2254.[1]

## I.

For criminal offenses committed in 2011, Armstrong was convicted in the Circuit Court of the City of Waynesboro and sentenced in July 2012 to ten years in prison, with five years suspended. Around the same time, he was also sentenced to 18 months in prison for a probation violation related to an offense committed in 2009, giving him an active sentence of six years and six months to serve in the Virginia Department of Corrections ("VDOC"). Armstrong's appeals were unsuccessful.

---

[1] Under Rule 4(b) of the Rules Governing § 2254 Cases, the court may summarily dismiss a § 2254 petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

Armstrong entered VDOC custody in September 2012. Shortly thereafter, he received notice of his annual review by the Institutional Classification Authority ("ICA") for November 2012, stating that he had been initially classified as a security level 2 and a "GCA level 1." (Pet. Ex. D). Similarly, Armstrong's Care Plan Agreement for August 2013 and his ICA annual review notice for 2014 referred to his "GCA level." (See Pet. Ex. C and I.) According to Armstrong, "GCA" on his paperwork referred to Virginia's Good Conduct Allowance system. See Va. Code Ann. §§ 53.1-198 to -202.1.

Virginia's GCA system for good conduct time provides that "every person who, on or after July 1, 1981, has been convicted of a felony . . . may be entitled to good conduct allowance not to exceed the amount set forth in § 53.1-201." Va. Code. Ann. § 53.1-199. Section 53.1-201 provides four possible levels of GCA credits an inmate may earn to reduce his maximum term of confinement: Class I (30 days GCA credit for each 30 days served); Class II (20 days GCA credit for each 30 days served); Class III (10 days GCA credit for each 30 days served); and Class IV (no GCA credit earned).

In 1994, the Virginia General Assembly enacted the "Earned Sentence Credits" ("ESC") system. Va. Code Ann. §§ 53.1-202.2, -202.3, -202.4. The ESC good time system applies to inmates sentenced for offenses committed on or after January 1, 1995. Such an inmate may accumulate a maximum of four and one half days of credit against his term of confinement per each 30 days served. Va. Code Ann. § 53.1-202.3.

Armstrong contends that he is entitled to GCA credits, because his offenses occurred after July 1, 1981, and his early prison paperwork used these initials in referring to his good conduct time status. The notice and hearing report related to Armstrong's December 2015 ICA annual review, however, do not mention "GCA level," and refer instead to his "good time

2

earning level," "Good Time Level," or "Class Level." (Pet. Ex. B and B1.) Furthermore, a sentence summary issued to Armstrong in January 2016, indicates that as to each of the sentences he is currently serving, his good time has been and will continue to be calculated under the ESC system. (Pet. Ex. E.)

Armstrong's § 2254 petition asserts the following overlapping grounds for relief: (A) by enacting Va. Code Ann. § 53.1-202.2, the Virginia legislature "impaired its obligation to the contract with" petitioner, creating a protected liberty interest in GCA credit; (B) by stripping petitioner of his right to earn good time credits under the GCA system, the VDOC violated his due process rights; and (C) "the [VDOC] deliberately misconstrued, promulgat[ed] and enforced Virginia laws within its operating procedures and in doing so violated" petitioner's constitutional rights under the Eighth Amendment and his rights under state law and the Constitution of Virginia.[2] (Pet. 5-6, ECF No. 1.)

## II.

The federal district court "shall entertain an application for a writ of habeas corpus [under 28 U.S.C. § 2254] in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a) (emphasis added). The "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Any claim concerning the fact or length of a petitioner's present or future confinement falls exclusively in the habeas arena. Id. at 487. A claim that petitioner was wrongfully deprived

---

[2] In June 2015, Armstrong filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, arguing similar claims regarding his alleged right to receive good time credit under the GCA system instead of the ESC system. The Supreme Court dismissed his petition on October 15, 2015, finding that Armstrong's claims were "not cognizable [because] . . . this Court's habeas corpus jurisdiction includes 'cases in which an order, entered in the petitioner's favor . . . will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement.'" (Pet. Mem. 7, ECF No. 1-1) (quoting Carroll v. Johnson, 685 S.E.2d 647, 652 (2009)). Accordingly, this court will presume that Armstrong has no available state court remedy on these issues, and his claims are, therefore, exhausted as required under § 2254(b).

of earned good conduct credit that resulted in a longer term of confinement can be cognizable under § 2254, if it implicates constitutionally protected rights. Id. at 485-86.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Thus, neither the Due Process Clause nor the Eighth Amendment obligates Virginia to allow Armstrong to earn GCA credit, ESC credit, or any other form of good conduct credit toward early conditional release from prison. Therefore, the court will dismiss Armstrong's petition to the extent that he is claiming an Eighth Amendment or substantive due process right to earn good time credit.

Of course, a state may voluntarily establish under state law a good conduct credit system allowing for early conditional release based on an inmate's good conduct in prison. In such cases, federal courts must allow state authorities "a wide range for experimentation and the exercise of discretion" in designing and implementing such a system. See, e.g., Franklin v. Shields, 569 F.2d 784, 800 (4th Cir. 1977) (en banc) (regarding Virginia parole statutes). As a result, an inmate's constitutional protections related to such state law matters are limited.

Armstrong first appears to argue that Virginia cannot lawfully reduce the maximum amount of good conduct time its inmates may earn. In some circumstances, this argument could have merit. The Ex Post Facto Clause of the United States Constitution prohibits states from enacting ex post facto laws—those that "increase[ ] punishment beyond what was prescribed when the crime was consummated." Weaver v. Graham, 450 U.S. 24, 30 (1981) (interpreting U.S. Const. Art. I, § 9). "The critical question is whether the law changes the legal consequences of acts completed before its effective date." Id. at 31. In Weaver, the Supreme Court held that a state law reducing the amount of good time an inmate could earn was an unconstitutional ex post

4

facto law as applied to any inmate whose crime was committed before the law took effect. Id. at 36.

Armstrong has no viable ex post facto claim about the VDOC's calculation of his good time under the less favorable ESC system. The state legislature enacted the ESC statutory scheme in 1994, and applied it only to persons who committed crimes on or after January 1, 1995. At the same time, the legislature added a provision to the GCA statutory scheme, limiting its application for inmates not yet convicted; Virginia Code § 53.1-202.1 provides that "Article 3 [§§ 53.1-198 through 53.1-202.1] shall not apply to any sentence imposed upon a conviction of a felony offense committed on or after January 1, 1995." Because these changes to Virginia's good conduct system occurred long before Armstrong committed his criminal offenses in 2009 and 2011, they were not unconstitutional ex post facto laws.

Armstrong also argues that he has been deprived of some protected interest in earning GCA credit without due process. This claim also lacks merit.

> The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.

Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). If a petitioner establishes a protected liberty interest, to state an actionable procedural due process claim, he must also "demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978).

5

As stated, Armstrong does not enjoy any liberty interest directly under the Constitution in receiving good conduct time. Greenholtz, 442 U.S. at 7. Thus, he must demonstrate that Virginia laws created the liberty interest to which he now seeks entitlement. He can make no such showing. On the contrary, Virginia law expressly states that an inmate convicted of offenses committed after January 1, 1995, like Armstrong, cannot earn GCA credit and may, instead, earn ESC credit against his sentence.[3] See Va. Code Ann. § 53.1-202.1; 53.1-202. Because state law thus created no expectation for Armstrong to earn GCA credit at any time during his prison term, he has no constitutionally protected liberty interest in earning that type of good time.[4] Prieto, 780 F.3d at 252. Thus, Armstrong's procedural due process claim fails on the first prong of the due process analysis and must be dismissed accordingly.

Armstrong also suggests that Virginia's different systems of good conduct time somehow constitute a violation of equal protection of the laws—by treating inmates differently based on the dates of their offenses. This claim also lacks merit.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Courts have interpreted this clause as commanding that similarly situated persons be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). As Armstrong himself recognizes, Virginia's ESC good time statute was enacted as part of a legislative effort toward "truth in sentencing"—to equalize the percentage of the imposed prison sentence each inmate would actually serve for any offense committed after January 1, 1995. Armstrong

---

[3] See, e.g., Brown v. Clarke, No. 2:15CV138, 2015 WL 5579944, at *4 (E.D. Va. Sept. 22, 2015) ("Brown is not eligible to earn good time credit under the GCA system, because he was convicted of the felony underlying his sentence after January 1, 1995.")

[4] Armstrong argues at some length that the Virginia General Assembly, by enacting the GCA good time statute long before he committed his criminal offenses, gave him a "quasi-contractual" right, and therefore a federally protected liberty interest, in earning good time under the GCA system instead of ESC good time system. He cites no precedent for this fanciful theory, and the court finds none.

6

committed his offenses after that date. Thus, he is not similarly situated to inmates who committed offenses prior to that date and can lawfully be subject to the ESC good conduct system. The court will dismiss any equal protection claim accordingly.

The remainder of Armstrong's grounds for relief rest on state law. Violations of state law do not give rise to any viable claim under § 2254 that Armstrong is confined in violation of federal law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law") (citations omitted).

### III.

For the stated reasons, the court concludes that Armstrong's petition states no ground on which he is entitled to relief under § 2254. Therefore, the court will summarily dismiss his habeas petition. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner.

ENTER: This ___ day of July, 2016.

/s/ Glen Conrad
Chief United States District Judge